**ORIGINAL**

1  IBRAHIMA MBODJI[1]
   A98-807-641
2  El Centro ICE Detention Center
   1115 N. Imperial Ave.
3  El Centro, CA 92243



FILED

MAR 2 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11 | IBRAHIMA MBODJI,              | Civil Action No.
   | [A98-807-641],               |
12 |                              | '08 CV 0517 JLS NLS
   |              Petitioner,     |
13 |                              |
   |      v.                      | PETITION
14 |                              | FOR
   | MICHAEL CHERTOFF, SECRETARY  | WRIT OF HABEAS CORPUS
15 | OF THE DEPARTMENT OF         |
   | HOMELAND SECURITY, MICHAEL   | [28 U.S.C. § 2241]
16 | MUKASEY, ATTORNEY GENERAL,   |
   | ROBIN BAKER, DIRECTOR OF SAN |
17 | DIEGO FIELD OFFICE, U.S.     |
   | IMMIGRATION AND CUSTOMS      |
18 | ENFORCEMENT, ROBERT RILLAMAS,|
   | OFFICER-IN-CHARGE,           |
19 |                              |
   |            Respondents.      |

---

25    [1]The petitioner is filing this petition for a writ of habeas corpus with the assistance of
James Fife and the Federal Defenders of San Diego, Inc., who drafted the instant petition. That
26 same counsel also assisted the petitioner in preparing and submitting his request for the
appointment of counsel. Robin Baker is the director of the San Diego field office of U.S.
27 Immigration and Customs Enforcement. He administers federal immigration laws on behalf of
the Secretary of Homeland Security in the federal judicial district for the Southern District of
28 California. In Mr. Baker's capacity as the director of the local office of U.S. Immigration and
Customs Enforcement, he has immediate control and custody over the petitioner. Robert
Rillamas is the ICE officer in charge of the detention facility holding the petitioner.

CR

# I.

# **INTRODUCTION**

The Petitioner, Ibrahima Mbodji, respectfully petitions this Court for a writ of habeas corpus to remedy his unlawful detention.

Petitioner is in the custody of the Secretary of the Department of Homeland Security and the Attorney General of the United States and their employees (hereinafter "Respondents"). He is detained at the Respondents' detention facility in El Centro, California, under the control of the officer in charge.

# II.

# **JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. §§ 1331, 2241(c)(1) and (3), and U.S. Const. art. I., § 9, cl. 2, because the Petitioner is being unlawfully detained as a result of U.S. Immigration and Customs Enforcement's misapplication of the detention provisions of 8 U.S.C. §§ 1226 & 1231. Federal district courts have jurisdiction to entertain habeas corpus petitions under 28 U.S.C. § 2241 to address the lawfulness of detentions of non-citizens by ICE. See Zadvydas v. Davis, 533 U.S. 678, 686-90 (2001); Demore v. Kim, 538 U.S. 510, 516-17 (2003); Clark v. Martinez, 543 U.S. 371, 379 (2005); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). Moreover, his detention violates the Constitution, the laws, and the treaties of the United States, raising a federal question under 28 U.S.C. § 1331. See Magana-Pizano v. INS, 200 F.3d 603, 610 (9th Cir. 2000); Goncalves v. Reno, 144 F.3d 110, 123 (1st Cir. 1998). Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482-83 (1999), makes clear that the Petitioner's habeas petition is not barred by 8 U.S.C. § 1252(g).

Venue is proper in this district because the Petitioner is detained here. See 28 U.S.C. § 2241, et. seq., & 28 U.S.C. § 1391(e).

/ / /

# III.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### Petitioner's Background

The Petitioner is a native and citizen of Senegal. He came to the United States in February 2001, when he was nineteen years old. He was lawfully admitted on a tourist visa, but continued to reside in the United States beyond the expiration of his visa.

After his admission to the United States, Petitioner entered into a relationship with a U.S. citizen, and they have a U.S. citizen child, who is now nearly three years old. The child was born out of wedlock. Petitioner has no criminal convictions.

### Removal Proceedings and Initiation of Current Detention by Respondents

Petitioner was taken into the custody of Respondents on July 18, 2006, which is the beginning of his present period of detention. On September 7, 2006, he was given a bond of $7,500, which he cannot afford to pay. After over six months in custody, on January 30, 2007, a removal hearing was held. The Government proceeded solely on a charge of overstaying his visa. The immigration judge found Petitioner removable and denied Petitioner's application for withholding of removal under the Convention Against Torture due to his on his fear of physical harm and torture from Senegal officials if returned to his country. Petitioner argued that he is subject to physical harm due to religious persecution. Because Petitioner has fathered a child out of wedlock, in violation of Islamic Shari'a law, and so he would be subject to abuse by Senegalese officials.

### Status of Petitioner's Legal Challenges to Removal

Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals. Petitioner argued he should have been granted withholding under CAT due to religious persecution. The BIA affirmed on May 29, 2007.

Petitioner then filed a timely petition for review *pro se* with the Ninth Circuit Court of Appeals on June

22, 2007, in Case No. 07-72503. The same day, Petitioner moved for a stay of deportation pending appeal; the Government filed an opposition to the stay on September 14, 2007. The Ninth Circuit granted the stay on October 5, 2007. Petitioner's opening brief was filed on December 31, 2007. The Government was filed its response brief on March 11, 2008. Petitioner has yet to file his reply, and the case is not yet calendared.

**Prior Challenges to Detention**

Because petitioner was not found deportable on account of a criminal conviction, he is not subject to the mandatory detention requirements of 8 U.S.C. § 1226(c). Nonetheless, ICE has denied petitioner release on supervision during custody reviews required by regulations, most recently in an annual custody review on September 11, 2007, on the alleged basis that his "actions and lack of responsibility" made him an "extreme flight risk." <u>See</u> Appendix A attached hereto. Petitioner has filed no previous request for relief from detention with this or another court.

IV.

**LEGAL ARGUMENT**

**THIS COURT MUST RELEASE THE PETITIONER FROM THE CUSTODY OF THE
RESPONDENTS UNDER APPROPRIATE CONDITIONS OF SUPERVISION.**

In the instant action, Petitioner seeks release from the custody of Respondents on the basis of two Ninth Circuit decisions, <u>Tijani v. Willis</u>, 430 F.3d 1241 (9th Cir. 2005), and <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069 (9th Cir. 2006). These cases follow the Supreme Court's principles on indefinite detention laid down in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689 (2001), and apply them to detainees subjected to prolonged detention and whose orders of removal are on review. These cases hold that it is "constitutionally doubtful" that the detention statutes permit lengthy periods of custody pending the outcome of legal challenges. Under the authority of <u>Tijani</u> and <u>Nadarajah</u>, petitioner is entitled to release on order of supervision pending resolution of his appeals.

Two federal statutes authorize civil detention of aliens prior to final removal orders. Aliens may be

4

detained or released at the discretion of the Attorney General under 8 U.S.C. § 1226(a). However, aliens who are subject to removal due to certain types of criminal convictions, such as aggravated felonies or crimes of moral turpitude, are detained under so-called mandatory detention provisions in 8 U.S.C. § 1226(c). Once an order of removal is final, however, continued detention is governed by 8 U.S.C. § 1231 and regulations.

If detainees with final orders are not removed within the 90-day statutory period, the Attorney General can release them under appropriate conditions of supervision, including regular appearances before an immigration officer and travel restrictions, among other requirements. See Ma v. Ashcroft, 257 F.3d 1095, 1104 (9th Cir. 2002); see also 8 U.S.C. § 1231(a)(3) (listing the conditions of supervision for deportable or removable aliens released from immigration custody at the expiration of the ninety-day removal period). The Attorney General may detain a deportable or inadmissible alien beyond the removal period only when he determines that the individual would "be a risk to the community or unlikely to comply with the order of removal" if released from immigration custody. 8 U.S.C. § 1231(a)(6).

In Zadvydas, however, the Supreme Court held that due process constraints on this civil detention authority permit only a period of custody that is reasonably necessary to bring about an alien's removal from the United States, and "does not permit indefinite detention." 533 U.S. at 689. Thus, federal officials **must** release a deportable alien from custody under appropriate conditions of supervision when no "significant likelihood of removal [exists] in the reasonably foreseeable future." Id.; see also Martinez, 543 U.S. at 386-87 (Zadvydas principles applicable equally to class of inadmissible aliens).

In Zadvydas, Kim, and Martinez, the Supreme Court repeatedly recognized that unreasonable, indefinite, civil detention raises serious due process problems. It construed the immigration detention statutes consistently with the Fifth Amendment as permitting detention only during a period reasonably necessary to accomplish removal. See Zadvydas, 533 U.S. at 690; Kim, 538 U.S. at 513; Martinez, 543 U.S. at 386; see also Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003) (immigration detention should last only "for a time

reasonably required to complete removal proceedings in a timely manner"). In short, a detention which may be reasonably related to a government purpose at the outset may no longer comply with due process requirements once it becomes unreasonably prolonged. See Zadvydas, 533 U.S. at 699 ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. See 1 E. Coke, Institutes *70b ('Cessante ratione legis cessat ipse lex') (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)."); Kim, 538 U.S. at 532 (Kennedy, J., concurring) ("If the Government cannot satisfy this minimal, threshold burden [of removability], then the permissibility of continued detention pending deportation proceedings turns solely upon the alien's ability to satisfy the ordinary bond procedures–namely, whether if released the alien would pose a risk of flight or a danger to the community."); Martinez, 543 U.S. at 385 ("In Zadvydas, it was the statute's text read in light of its purpose, not some implicit statutory command to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only for the period reasonably necessary to bring about their removal.").

The Ninth Circuit in Tijani and Nadarajah has applied the reasoning of these Supreme Court cases to the circumstances of detainees whose orders of removal are still subject to active legal challenges, that is, those detained under 8 U.S.C. § 1226 instead of § 1231. Consistent with the trend seen in Martinez to bring all classes of indefinitely detained aliens under the due process protections recognized in Zadvydas, Tijani and Nadarajah provide relief to detainees in petitioner's circumstances who are exposed to prolonged civil detention while their appeals are processed.

In Tijani, the Court of Appeals reviewed a § 2241 habeas petition by a deportee who had been held in custody for 32 months awaiting the outcome of his appeals. Tijani held it was "constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." 430 F.3d at 1242. Distinguishing Demore v. Kim, because Tijani did not concede he was

1   deportable, the Court ordered his release, unless he was provided with a bail hearing and found unsuitable for

2   release under the usual factors of risk of flight or danger to the community. See id.; see Kim, 538 U.S. at 522-

3   23. Moreover, Kim was grounded on the Supreme Court's assumption that the period of detention would be

4   "brief," only that "necessary for his removal proceedings," which the Supreme Court estimated as roughly six

5   weeks in duration on average, or five months if further review is sought. See id.; see Kim, 538 U.S. at 522-23,

6   

7   530. As Tijani's detention while awaiting outcome of his appeals far exceeded these estimates of the

8   constitutionally permitted "brief period" of detention, he was entitled to release under the Zadvydas principles.

9   See id. Thus, Tijani was entitled to release on habeas corpus unless the government proved at a hearing before

10  an immigration judge that the petitioner was a flight risk or danger to the community. See id.[2]

11  

12      In his concurring opinion, Judge Tashima expanded on the decision in order to provide guidance to the

13  district courts. Judge Tashima saw the heart of the case to be a problematic administrative decision, In re

14  Joseph, 22 I. & N. Dec. 799 (BIA 1999), which erroneously treated 8 U.S.C. § 1226(c) as permitting indefinite

15  

16  detention. See id. at 1243-44 (Tashima, J., concurring). Rather, Zadvydas made it clear that "[w]hen such

17  a fundamental right [as personal liberty] is at stake, the Supreme Court has insisted on heightened procedural

18  protections to guard against the erroneous deprivation of that right." Id. at 1244. The natural limitation on

19  authority to detain, in Judge Tashima's view, is "[o]nly those immigrants who could not raise a 'substantial'

20  argument against their removability should be subject to mandatory detention." Id. at 1247. Such a standard

21  

22  "strikes the best balance between the alien's liberty interest and the government's interest in regulating

23  immigration." Id. Because Tijani had a potentially meritorious claim that his conviction was not a categorical

24  crime of moral turpitude, he made a showing of a "substantial argument" which would warrant release on

25  

_____

26      [2]However, in so proving, it is important that the assessment be based on the *current*

27  circumstances relating to the detainee and not simply on past criminal convictions. See Lawson
    v. Gerlinski, 332 F. Supp.2d 735, 745 (M.D. Pa. 2004) (" 'To presume dangerousness to the

28  community and risk of flight based solely on [an alien's] past record does not satisfy due
    process.' ") (quoting Ngo v. INS, 192 F.3d 390, 398-99 (3d Cir. 1999)).

1    appeal. See id. at 1247-48.

2        Judge Tashima observed the perverse, penalizing effect of detention for those who have the best reasons

3    to stay and fight: "By subjecting immigrants who, like Tijani, raise difficult questions of law in their removal

4    proceedings to detention while those proceedings are conducted, the Joseph standard forces those immigrants

5    
6    to endure precisely what Tijani has endured: detention that lasts for a prolonged period of months or years."

7    Id. at 1246 n.3. Judge Tashima concluded that liberty is one of the most fundamental rights protected by the

8    
9    Constitution, and the Supreme Court has indicated time and again that the individual should not carry the

10   burden of protecting this fundamental right. See id. at 1245-46. Moreover, he put into question the continued

11   viability of Joseph, which was decided prior to the Supreme Court's holding in Zadvydas. See id. at 1246;

12   see also Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (lower courts are not bound by prior

13   precedent that has been seriously undermined by intervening Supreme Court authority).

14   
15       In Nadarajah, the Ninth Circuit considered an indefinite detainee held under suspicion of terrorist

16   affiliation. Nadarajah challenged his detention and was pursuing a claim for asylum, but the government

17   relied on the silence of the asylum detention statute to detain Nadarajah while this litigation proceeded. See

18   443 F.3d at 1076-78. However, the Court held that the asylum detention statute was equally subject to the

19   
20   strictures of Zadvydas. See id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b),

21   allowing release on bail pending appeal, apply to such immigration detentions. Id. at 1083. The usual

22   standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal

23   question and a balance of the hardships. Id. Moreover, the showing of probable success correspondingly

24   lessens as the length of detention increases. Id. at 1083-84. In Nadarajah, the Court found the 52 months of

25   detention were a great hardship that accordingly reduced the required showing of likelihood of success. Id.

26   
27       Petitioner's case is factually similar to Tijani and Nadarajah, and therefore he too is entitled to

28   consideration for release. Like Tijani, Petitioner can raise his argument for release through the vehicle of a

8

§ 2241 petition, and he also can point to substantial arguments regarding his deportation proceeding.  His petition for review in the Ninth Circuit argues that the immigration judge at the removal hearing erred in holding petitioner was ineligible for relief in the form of withholding under the Convention Against Torture. Petitioner argued that because he has fathered a child out of wedlock, he will be subject to official abuse on return to Senegal, since having children outside of marriage is a violation of the strict Shari'a laws of Islam. Senegal is 94% Muslim.  See CIA, World Factbook–Senegal, https://www.cia.gov/library/publications/ the-world-factbook/geos/sg.html (Feb. 28, 2008).   Moreover, Islamic courts enforcing Shari'a operate independently of the secular courts under Senegalese law. See U.S. Dep't of States, Senegal: Country Reports on Human Rights Practices 2006, http://www.state.gov/g/drl/rls/hrrpt/2006/78754.htm (Mar. 6, 2007). Thus, there is a concrete basis for Petitioner's fear of officially sanctioned persecution.  This claim would count as a "substantial question" under the Tashima analysis in Tijani. Moreover, as Judge Tashima observed, the detainee need not show certainty of outcome to gain release, just that "a closer look is surely required." Tijani, 430 F.3d at 1248 (Tashima, J., concurring).

Also, as in Nadarajah, Petitioner here can demonstrate a basis for release under the factors in Fed. R. App. P. 23(b).  He raises substantive legal and factual questions.  His continued loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardships, the Court in Nadarajah found that 52 months' detention was a very burdensome hardship which correspondingly lessened the required showing of likely success on appeal, and the 32 months of detention in Tijani was deemed excessive.  Petitioner here has been in Respondents' custody for over **20 months**, over three times the presumptively reasonable time under Supreme Court case law.   Moreover, because Petitioner was ordered removed solely on the basis of overstaying his visa, he is not even subject to the mandatory detention provisions of 8 U.S.C. § 1226(c), unlike Nadarajah, whom ICE suspected of affiliation, at least, with a terrorist organization, and so potentially subject to mandatory detention. See 443 F.3d at 1073-74; 8 U.S.C. §§ 1226(c)(1)(D), 1227(a)(4)(B), & 1182(a)(3)(F).

Balancing the factors identified in case law for release of detainees while legal challenges are pending, Petitioner is entitled to release as much as the petitioners in <u>Tijani</u> and <u>Nadarajah</u>. In addition to the severe harm flowing generally from a continued deprivation of personal liberty, his ability to pursue his meritorious appeal without the assistance of counsel is seriously impaired by continued detention.

As Chief Judge Vanaskie observed in <u>Lawson</u>, 332 F. Supp. 2d at 745:

> The price for securing a stay of removal should not be prolonged incarceration. "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.' " <u>Id.</u> The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims.

Consonant with these principles, this Court and other district courts have granted petitioners relief in cases which have raised identical claims under <u>Tijani</u> and <u>Nadarajah</u>, recognizing that indefinite detention pending substantive legal challenges violates due process. See <u>Judulang v. Chertoff</u> __ F. Supp.2d ___, 2008 WL 410684 (S.D. Cal. Feb. 12, 2008); <u>Mustanich v. Gonzales</u>, No. 07CV1100-WQH (LSP), 2007 WL 2819732 (S.D. Cal. Sept. 27, 2007); <u>Martinez v. Gonzales</u>, 504 F. Supp.2d 887 (C.D. Cal. 2007); <u>Malcalma v. Chertoff</u>, No. 06CV2623-WQH (AJB), 2007 WL 1516744 (S.D. Cal. May 22, 2007). Copies of the unpublished orders granting relief in these cases are attached hereto in Appendix B.

/ / /

/ / /

/ / /

/ / /

/ / /

## V.

## **REQUESTED RELIEF**

The Petitioner requests that this Court order the Respondents to release him from custody under the conditions of supervision set forth in 8 U.S.C. §1231(a)(3). Alternatively, the Court should order a release hearing to evaluate Petitioner's eligibility for supervision under appropriate conditions.

## VI.

## **VERIFICATION**

I, Ibrahima Mbodji, hereby verify that the facts contained in the instant Petition are true and correct

Respectfully submitted,

Dated: 3-14-08

_____
**IBRAHIMA MBODJI**
Petitioner

11

# Appendix A

*Office of Detention and Removal Operations*
*San Diego Field Office*

**U.S. Department of Homeland Security**
880 Front Street
San Diego, CA 92101

*Custody review copy.*



**U.S. Immigration
and Customs
Enforcement**

MBODJI, Ibrahima
C/O El Centro Service Processing Facility
1115 N. Imperial Avenue
El Centro, CA 92243

## Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview and consideration of any information you submitted to ICE's reviewing officials.

You have been arrested for a domestic dispute with the mother of your child. The charges were later dropped and you were turned over to ICE, due to your illegal status in this country. You entered the country as a visitor and failed to comply with the regulations set forth with your Visa. It is evident by your actions and lack of responsibility that you never had any intentions of returning to your native country. You have not been a provider for your child much less a father. Based on the aforementioned, you are deemed an extreme flight risk pursuant to 8CFR 241.4.

Based on the above, you are to remain in ICE custody pending your removal from the United States. You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

_____
Robert Culley, Deputy Field Office Director, San Diego, CA

_____
9/11/7
Date

# Appendix B

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

Page 1

Judulang v. Chertoff
S.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Joel JUDULANG, Petitioner,
v.
Michael CHERTOFF, Alberto Gonzales, Robin F.
Baker, and Gabriela Pacheco, Respondents.
No. 07CV1414.

Feb. 12, 2008.

Janet Tung, Federal Defenders, Federal Defenders
of San Diego, San Diego, CA, for Petitioner.
Raven M. Norris, US Attorney CV, US Attorneys
Office Southern District of California, San Diego,
CA, for Respondents.

### ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

IRMA E. GONZALEZ, Chief Judge.

*1 Presently before the Court is petitioner Joel
Judulang's petition for writ of habeas corpus pursu-
ant to 28 U.S.C. § 2241. (Doc. No. 1 .) For the fol-
lowing reasons, the Court grants the petition in part
and orders respondents to provide petitioner with a
bail hearing.

### BACKGROUND

#### Factual Background

The parties agree as to the relevant facts. Peti-
tioner, born in the Phillipines, has been a lawful
permanent resident of the United States since July
4, 1974. On October 11, 1989, petitioner was con-
victed of voluntary manslaughter in California state
court and sentenced to a six-year suspended sen-
tence. (Respondents' Opposition, Ex. B.) On June
12, 2003, petitioner was convicted of grand theft in
California state court and sentenced to two years

and eight months in prison. (Id. Ex. C.)

On July 7, 2005, petitioner was taken into cus-
tody by Respondents due to the initiation of remov-
al proceedings. He was charged with deportability
pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii)
which allow the deportation of an alien convicted
of an aggravated felony and the deportation of an
alien convicted of two or more crimes involving
moral turpitude. Two and a half years later, peti-
tioner remains in custody at the Immigrations and
Customs Enforcement ("ICE") El Centro Detention
Center. On September 28, 2005, an immigration
judge ordered petitioner removed. (Opp.Ex. E.) Pe-
titioner appealed to the Board of Immigration Ap-
peals ("BIA"), which denied his appeal on February
3, 2006. (Opp. Ex. F .)

Petitioner filed a petition for review of the
BIA's decision in the Ninth Circuit Court of Ap-
peals on February 24, 2006. (Opp.Ex. G .) His peti-
tion for review contests his removability on several
grounds. Petitioner concurrently filed a motion for
stay of removal, which Respondents did not op-
pose, and the court granted on July 7, 2006. (Id.)
Petitioner filed his opening brief on October 23,
2006, and Respondents filed an opposition on
December 7, 2006.(Id.) The Ninth Circuit heard or-
al argument on June 4, 2007. (Id.) The Ninth Cir-
cuit then stayed petitioner's case pending the out-
come of another case addressing the same issue
raised by petitioner, Abebe v. Gonzales.In a pub-
lished opinion in Abebe, 493 F.3d 1092, 1099 (9th
Cir.2007), the court rejected a detainee's argument
under Section 212(c) of the Immigration and Natur-
alization Act which was identical to one of petition-
er's claims in his appeal. The Ninth Circuit has
since withdrawn its opinion pending rehearing of
Abebe en banc (Petitioner's Notice, Doc. No. 9).
The court cited Abebe in denying petitioner's appeal
as to his Section 212(c) argument (id. at 5), and pe-
titioner argues the court is likely to rehear his case
after rehearing Abebe (Doc. No. 11).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
**(Cite as: — F.Supp.2d ----)**

According to the documents attached to respondents' opposition in this case, petitioner's continued detention has been reviewed twice during the pendency of his Ninth Circuit appeal. On June 6, 2006, petitioner was informed of ICE's decision to continue to detain him due to his failure "to demonstrate" he "will not pose a flight risk."(Opp.Ex. I.) On June 5, 2007, petitioner was informed of the ICE's decision to continue detention by a letter explaining he is "an extreme threat to the community" and thus will remain in ICE custody pending removal from the United States. (Opp.Ex. H.)

### Procedural Background

**\*2** After the instant petition was filed on August 2, 2007, the Court granted petitioner's accompanying motions to proceed *in forma pauperis* and motion for appointment of counsel. (Docs. No. 1-4). Respondents filed a return in opposition on September 17, 2007. (Doc. No. 8.) On October 1, 2007, respondents filed a notice of the Ninth Circuit's denial of petitioner's appeal. (Doc. No. 9.) On October 9, 2007, petitioner filed a traverse. (Doc. No. 10.) On January 28, 2008, petitioner filed a notice of the Ninth Circuit's decision to rehear *Abebe en banc.*(Doc. No. 11.)

### DISCUSSION

### Jurisdiction

Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge "the extent of the Attorney General's authority" to detain a removable alien under the statutes authorizing detention. *Zadvydas v. Davis,* 533 U.S. 678, 687-89, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *see also Demore v. Kim,* 538 U.S. 510, 516-17, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Where, as here, an administrative order of removal is not final, a "habeas corpus jurisdiction remains in the district court."*Nadarajah v. Gonzales,* 443 F.3d 1069, 1075-76 (9th Cir.2006); *see also*8 U .S.C. § 1231(a)(1) (describing how a removal order

becomes final).

### Petitioner's Claim

As an initial matter, the Court considers the statutory authorization for petitioner's detention pending the outcome of his Ninth Circuit appeal. Respondents contend petitioner is being detained pursuant to the discretionary authority of 8 U.S.C. § 1226(a)(1) rather than the mandatory provision of Section 1226(c).Section 1226(a) permits the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States."Section 1226(c) sets out specific cases in which that detention is mandatory, for example, when the alien has committed certain classes of criminal offenses. Respondents contend Section 1226(c) only applies during administrative removal proceedings, while Section 1226(a) continues to apply after the end of the administrative process and through judicial review. No such temporal distinction is made in the statute.[FN1]The court rejects the argument petitioner's detention, previously mandatory under Section 1226(c), is now discretionary under Section 1226(a).[FN2] Moreover, the distinctions between Sections 1226(a) and (c) are not relevant in assessing the reasonableness of prolonged detention under either provision. Discretionary detention, like mandatory detention, must comply with due process of law. *Nadarajah v. Gonzales,* 443 F.3d 1069, 1076, 1079-80 (9th Cir.2006) (assessing reasonableness of discretionary detention under another statutory provision).[FN3]

The Supreme Court and the Ninth Circuit have previously assessed the reasonableness of detention under Section 1226(c) pending a final order of removal. In *Demore v. Kim,* the Supreme Court held aliens may be detained under Section 1226(c)"for the brief period necessary for their removal proceedings."538 U.S. 510, 513, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). In that case, detainee Hyung Joon Kim conceded deportability and was held for approximately six months during his administrative proceedings. Kim argued he could not be detained

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
**(Cite as: --- F.Supp.2d ----)**

without the government establishing, at an individualized bond hearing, that he was a flight risk or a danger to the community. The Court rejected his argument. First, the Court distinguished an earlier case in which it held aliens could not be detained indefinitely after being ordered removed.*Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In distinguishing *Zadvydas,* the Court noted an alien's detention during removal proceedings serves government interests which are not furthered by the continued detention of individuals who, while ordered removed, have no prospect of future removal. *Kim,* 538 U.S. at 527-28. The Court also emphasized detention during removal proceedings is "of a much shorter duration" than the "indefinite" and "potentially permanent" detention at issue in *Zadvydas. Id.* at 528.Reviewing statistics from the Executive Office for Immigration Review, the Court concluded removal proceedings "last an average time of 47 days and a median of 30 days."*Id.* at 529.Appeals to the BIA, taken by about 15% of aliens, take "an average of four months." *Id.* The Court found Kim's detention for six months was reasonable despite being slightly longer than average. *Id.*

**\*3** However, the Ninth Circuit has since held prolonged detention during removal proceedings is not permissible under section 1226(c).*Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005). The court distinguished *Kim* because the petitioner, Monsuru Tijani, had not conceded deportability. *Id.* In a brief opinion, the court stated in part:

As of today's date, Tijani has been deprived of his liberty by the government for a period of over two years and eight months. This deprivation has been inflicted not as the result of any adjudication of crime but as a bureaucratic application of the authority conferred on the Attorney General by 8 U.S.C. § 1226(c). Despite the substantial powers that Congress may exercise in regard to aliens, it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal..... Two years and eight months of process is not

expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

*Id.*

Petitioner argues, and the court agrees, *Tijani* mandates a bail hearing in petitioner's case. Respondents argue *Tijani* does not apply because petitioner's detention became "voluntary" when he chose to appeal to the Ninth Circuit.FN4Some district courts have limited *Tijani*'s application to cases in which the unreasonably long detention occurred primarily during administrative proceedings, rather than during an appeal by the detainee to the Ninth Circuit.FN5But as other district courts have noted,FN6*Tijani* expressly considered the length of detention attributable to judicial review in concluding the detention had been unreasonably long. 430 F.3d at 1242. By ordering a bail hearing for Tijani after the end of his administrative proceedings and while he was seeking Ninth Circuit review of his removal order, the court implicitly rejected the view his detention had become "voluntary." The court's result, granting Tijani's writ of habeas corpus, is inconsistent with respondents' argument detention during an alien's appeal is "voluntary."

This Court therefore agrees with the other district courts which have included time detained pending judicial review in assessing the reasonableness of a prolonged detention.FN7This approach is consistent with the Supreme Court's decision in *Kim.*In that case, the Court placed great weight on the expedient nature of removal proceedings in holding detention during that "brief period" was permissible without a showing of dangerousness or flight risk. 538 U.S. at 529. Judicial appeals, whether undertaken by the detainee or the government, necessarily prolong detention past the "brief period" approved by *Kim.*FN8

The district courts which have disregarded appellate time in assessing the reasonableness of prolonged detention were concerned with the potential

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

Page 4

for dilatory tactics and frivolous appeals by detainees. *E.g. Mboussi-Ona v. Crawford,* No. CV 06-2897 PHX-NVW, 2007 WL 3026946 at *5 (D.Ariz. Sept.27, 2007) (stating if appellate time counted, "merely by seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible release"). But these concerns do not require the Court to disregard detention during judicial review. Instead, "[a] court must 'be sensitive to the possibility' that a removable alien may engage in 'dilatory tactics' in order to 'compel a determination' that his detention was unreasonably long."*Martinez v. Gonzalez,* 504 F.Supp.2d 887, 898 (C.D.Cal.2007) (internal citations omitted); *see also Mustanich,* 2007 WL 2819732 at *9. Circuit Judge Tashima, concurring in *Tijani,* would require a detainee's appeal to raise a "substantial argument" in order for detention during judicial review to be included in assessing reasonableness. 430 F.3d at 1247.

*4 Here, respondents do not argue petitioner's appeal is without merit. *See Martinez,* 504 F.Supp.2d at 899. Petitioner's appeal relies on a Second Circuit decision, *Blake v. Carbone,* 489 F.3d 88 (2d Cir.2007), which conflicts with the Ninth Circuit's decision in *Abebe v. Gonzales.*In *Abebe,* Circuit Judge Berzon wrote a concurring opinion agreeing with the Second Circuit's decision in *Blake* and urging reconsideration of the case. 493 F.3d 1092, 1106 (Berzon, C.J., concurring). The Ninth Circuit has voted to rehear *Abebe en banc.*Thus petitioner's appeal has raised a "substantial question," and resolution of his appeal is likely to take up to a year while the court reviews *Abebe* and its decision in petitioner's case. *See Tijani,* 430 F.3d at 1242 (anticipating another year of litigation at the Ninth Circuit). The length of petitioner's detention during appeal is attributable to the complexity of the issues he has raised, not dilatory tactics on the part of petitioner or the government.

The Court thus concludes detaining petitioner for two and a half years without showing he is a flight risk or a danger to the community is unreasonable and not statutorily authorized by 1226(c).*Cf. Tijani,* 430 F.3d at 1242 (finding two years and eight months unreasonable); *Zadyvdas,* 533 U.S. at 701 (finding six months presumably reasonable); *Kim,* 538 U.S. at 529 (finding six months reasonable).

### Remedy

Petitioner requests he be released, or, in the alternative, given a release hearing to evaluate his eligibility for supervision "under appropriate conditions." (Petition at 9.) The Ninth Circuit in *Tijani* remanded the case to the district court:

with directions to grant the writ unless the government within 60 days of this order provides a hearing to Tijani before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

430 F.3d at 1242. In *Mustanich,* Judge Hayes also found it appropriate to grant the petitioner a bail hearing before an Immigration Judge within ten days. 2007 WL 2819732 at *8. A bail hearing will give respondents an opportunity to assess whether petitioner's continued detention is justified.

Respondents argue immigration judges lose jurisdiction over bond decisions after the end of administrative proceedings, citing 8 C.F.R. § 1003.19(a). Under that section, "[c]ustody and bond determinations ... may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."Section 1003.19(c)(1) states applications by a detainee for review of a bond determination shall be made to "the Immigration Court having jurisdiction over the place of detention."Respondents have cited no authority which states or implies an immigration judge would not have jurisdiction to review the custody determination in petitioner's case, and the Court's independent review found no support for respondents' position.[FN9]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

CONCLUSION

*5 For the foregoing reasons, the Court hereby GRANTS IN PART the petition for writ of habeas corpus. Respondents are ORDERED to provide petitioner a hearing within thirty days of this order before an immigration judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community.

**IT IS SO ORDERED.**

FN1. Respondents support their argument by citing the regulations, which specify "no alien described in section 236(c)(1) of the Act may be released from custody during removal proceedings."8 C.F.R. § 1236.1(c)(1)(i). Respondents then argue "removal proceedings" only encompasses administrative proceedings, citing *Demore v. Kim,* 538 U.S. 510, 513, 517-18, 527-28, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). While the Court in that case only considered administrative proceedings, those were the only proceedings the petitioner had undergone. Moreover, the Court never stated removal proceedings only included those before the administrative agency, nor did it interpret the statute or the regulations containing such a limitation. Respondents have cited no authority stating Section 1226(c) only applies during administrative proceedings.

FN2. In a factually analogous case in which an alien was detained pending judicial review of the BIA's decision, *Tijani v. Willis,* the Ninth Circuit evaluated the detention under Section 1226(c).430 F.3d 1241, 1242 & 1246 (9th Cir.2005). Judge William Q. Hayes rejected respondents' argument in an unpublished decision in *Mustanich v. Gonzales,* No. 07cv1100 WQH, 2007 WL 2819732 at *5 (S.D.Cal. Sept.26, 2007).

FN3. Accordingly, while the Court evaluates petitioner's detention in light of the decisions interpreting Section 1226(c), the Court would do the same if Section 1226(a) applied.

FN4. Respondents rely on an unpublished decision in *Cruz-Ortiz v. Gonzales,* 221 F. App'x 531 (9th Cir.2007). In that case, the court found the district court lacked jurisdiction. Without citation to *Tijani,* the court then stated "[i]n any event, appellant is being voluntarily detained-upon his requested stay of removal-pending appeal of his final removal order."*Id.* The brief, unpublished decision does not explain the facts of the case, the statutory basis for detention, or whether the petitioner contested removability. Moreover, *Tijani* had appealed to the Ninth Circuit and the court did not hold in that published decision his detention had thus become "voluntary." *Tijani,* 430 F.3d at 1242.

FN5.*See, e.g., Raghunath v. Crawford,* No. CV 07-0282 PHX-FJM, 2007 WL 4285387 at *3 (D.Ariz. Dec.03, 2007) (holding *Tijani* did not apply where prolonged detention was due to petitioner's Ninth Circuit appeal); *Mboussi-Ona v. Crawford,* No. CV 06-2897 PHX-NVW, 2007 WL 3026946 at *5 (D.Ariz. Sept.27, 2007) (finding "normal judicial appeal time" does not count toward unreasonableness of detention); *see also Bernal v. Chertoff,* No. 06cv2184 JAH at 4 (attached as Exhibit K to Respondent's Opposition) ("[Petitioner] is awaiting his pending judicial appeal-an appeal that he has chosen to pursue in the United States. Because it was Petitioner's own doing that he is still in detention here, there is no 'detention by default' as it was in *Tijani.*").

FN6. As Judge Hayes wrote in *Mustanich:* Whether detention pending judicial review can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)
(Cite as: --- F.Supp.2d ----)

be considered in assessing the reasonableness of an alien's mandatory detention pursuant to 8 U.S.C. § 1226(c), and if so, how it should be considered, is a question that has not been explicitly addressed by either the United States Supreme Court of the Court of Appeals for the Ninth Circuit. However, the Court of Appeals for the Ninth Circuit referenced the period of judicial review which had elapsed and that which was yet to come in support of its holding in *Tijani* that the alien's removal proceedings were not expeditious, and it is apparent that the *Tijani* Court included at least some time which accrued during judicial review in its conclusion that the petitioner had been detained for two years and four months.

   2007 WL 2819732 at *9 (internal citations omitted); *but see Mboussi-Ona,* 2007 WL 3026946 at *4 ("[A]lthough the court mentioned the length of Tijani's judicial appeal, that fact was not encompassed within an articulated rationale of the court" because the administrative time predominated.).

>    FN7. *See, e.g., Martinez v. Gonzalez,* 504 F.Supp.2d 887, 897 (C.D.Cal.2007) (rejecting argument time detained during judicial appeals does not count toward the reasonableness of a lengthy detention); *Mustanich,* 2007 WL 2819732 at *8 ("After reviewing the relevant case law, and particularly *Tijani,* the Court concludes that it can and must consider periods of detention which accrue pending judicial review in determining whether removal proceedings and detention pursuant to 8 U.S.C. § 1226(c) are expeditious and reasonable."); *Ali v. Crawford,* No. CV 06-01149 PHX-EHC, 2007 WL 1670165 at *4 (D.Ariz. June 8, 2007) (holding where petitioner contested removability, prolonged detention violated *Tijani* even if not due to the unreasonable delay of the INS); *Yoon v. Crawford,* No. CIV 06-3068 PHX-SMM (MHB), 2007 WL 4609573 at *4 (D.Ariz. Aug.22, 2007) (recommending the district court apply *Tijani* despite the

majority of the detention being attributable to Ninth Circuit appeal) (adopted by the district court in 2008 WL 45405 (Jan. 02, 2008)).

>    FN8. As in *Tijani,* and unlike in *Kim,* petitioner's Ninth Circuit appeal contests deportability. *Tijani* found this a persuasive distinction. 430 F.3d at 1242.

>    FN9. The cases indicate an immigration judge can hold such a hearing. Without addressing the immigration judge's authority, the Ninth Circuit ordered a bond hearing in *Tijani,* after the administrative proceedings had ended. In *Mustanich,* Judge Hayes ordered a bail bond hearing for a detainee held pending Ninth Circuit review. According to later submissions by the petitioner, that bond hearing was held within ten days. (Motion to Alter Judgment by Jess Mustanich, Doc. No. 7, Case No. 07cv1100.)

S.D.Cal.,2008.
Judulang v. Chertoff
--- F.Supp.2d ----, 2008 WL 410684 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
**(Cite as: Slip Copy)**

**C**
Mustanich v. Gonzales
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
    United States District Court,S.D. California.
    Jess MUSTANICH, aka Jess William Alfaro, Peti-
                        tioner,
                          v.
    Alberto GONZALES, et al., Respondents.
            **No. 07CV1100 WQH (LSP).**

                    Sept. 26, 2007.

  ORDER GRANTING PETITION FOR WRIT OF
            HABEAS CORPUS IN PART

HAYES, Judge.
    *1 Pending before the Court is Petitioner Jess
Mustanich's Petition for Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2241. (Doc. # 1).

                    **BACKGROUND**

    Born in El Salvador on August 15, 1978, Peti-
tioner Jess Mustanich was adopted by United States
citizens shortly after his birth and moved to the
United States. Petition for Writ of Habeas Corpus
(Pet .), ¶ 15. On February 22, 1979, the United
States admitted Petitioner, age six months, as a law-
ful permanent resident. Pet., ¶ 15.

    In 1988, Petitioner's father met with and tele-
phoned officers of the Department of Homeland Se-
curity in an attempt to secure United States citizen-
ship for Petitioner pursuant to 8 U.S.C. §
1433.[FN1]Pet., ¶ 9; Return, Ex. C at 4-6. Petitioner's
father also sought the help of a juvenile court. Re-
turn, Ex. C at 4-6. However, Petitioner's father was
unsuccessful in timely completing the paperwork
necessary to secure citizenship for Petitioner. Pet.,
¶ 9. Petitioner alleges that the United States Gov-
ernment's neglect and error resulted in Petitioner's
application for citizenship not being processed be-

fore Petitioner's eighteenth birthday. Pet., ¶ 9; Re-
turn, Ex. C at 4-6.

        FN1. Pursuant to 8 U.S.C. § 1433, "a cit-
        izen of the United States may apply to the
        Attorney General for a certificate of cit-
        izenship on behalf of a child born outside
        the United States," and the Attorney Gen-
        eral "shall issue such a certificate" if stat-
        utory conditions are fulfilled.

    On April 15, 1997, Petitioner was convicted of
two counts of residential burglary, in violation of
California Penal Code §§ 459 and 460(a). Pet., ¶
16. On December 21, 1998, Petitioner was con-
victed of being a prisoner in possession of a sharp
instrument, in violation of California Penal Code §
4502(A). Pet., ¶ 16.

    On July 10, 2003, Respondents took Petitioner
into custody and initiated removal proceedings
against    him    pursuant    to    8    U.S.C.    §
1227(a)(2)(A)(iii), which provides for the removal
of an alien convicted of an aggravated felony. Pet.,
¶ 17; Return, Ex. B. On February 10, 2004, an Im-
migration Judge (IJ) denied Petitioner's request for
termination of removal proceedings and ordered Pe-
titioner removed to El Salvador. Pet., ¶ 17; Return,
Ex. C. Petitioner argued unsuccessfully to the IJ
that the United States Government delayed and
wrongfully impeded Petitioner's father's attempt to
secure citizenship for Petitioner. Pet., ¶ 15; Return,
Ex. C. On July 29, 2004, the Bureau of Immigration
Appeals (BIA) affirmed the IJ's administrative or-
der of removal. Pet., ¶ 17; Return, Ex. D.

    On August 26, 2004, Petitioner filed a Petition
for Review of the BIA decision in the Court of Ap-
peals for the Ninth Circuit. Pet., ¶ 6; Return, Ex. H
(Docket, Court of Appeals for the Ninth Circuit
Case No. 04-74290). Petitioner also filed a motion
to stay deportation. Return, Ex. H. On August 27,
2004, the Court of Appeals for the Ninth Circuit
ordered Respondents to respond to Petitioner's mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

tion to stay deportation and to file the administrative record on or before October 26, 2004. Return, Ex. H. Respondents did not comply with the Court of Appeals' order. On November 3, 2004, Respondents requested an additional three months to file the administrative record and a response to Petitioner's motion to stay deportation. Return, Ex. H. On November 8, 2004, the Court of Appeals for the Ninth Circuit granted Respondents' request for an extension of time, and ordered Respondents to file the administrative record and a response to Petitioner's motion to stay deportation on or before January 25, 2005. Return, Ex. H. Respondents once again did not comply with the order of the Court of Appeals. Return, Ex. H. On January 28, 2005, Respondents filed the administrative record. Return, Ex. H.

*2 On February 7, 2005, the Court of Appeals accepted Respondents' late filing of the administrative record, but noted that Respondents had "failed to file a response to the motion for a stay."Return, Ex. H. The Court of Appeals ordered that "within 21 days from the date of this order, [respondents] shall file a response to the motion for stay. In light of this delay, if [respondents] [fail] to comply with this order, the court will construe [respondents'] failure to respond as a [statement] of non/opp to the stay motion." Return, Ex. H.

Respondents did not file a response to Petitioner's motion to stay deportation within 21 days of the Court of Appeals' February 7, 2005, order. Return, Ex. H. On March 10, 2005, the Court of Appeals ordered that, "[i]n light of this [court's] Feb. 7, 2005 order, [respondents'] failure to respond to the motion to stay removal is construed as a statement of non/opp to the stay motion." Return, Ex. H. The Court of Appeals granted Petitioner's motion for stay of deportation, and set a briefing schedule with respect to Petitioner's Petition for Review of the BIA's decision. Return, Ex. H.

On May 19, 2005, Petitioner filed the opening brief in the Court of Appeals. Return, Ex. H. Thereafter, on June 17, 2005, Respondents sought an extension of time to file an answering brief. Return, Ex. H. On July 6, 2005, the Court of Appeals granted Respondents' motion for an extension, and ordered Respondents to file an answering brief on or before July 29, 2005. Return, Ex. H. Respondents filed an answering brief on August 4, 2005. Return, Ex. H.

On June 18, 2007, Petitioner filed the pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. # 1). As of the date of the Petition, Petitioner had been incarcerated for three years and eleven months. Pet., ¶ 31.

During Petitioner's detention, Respondents internally reviewed the terms of Petitioner's detention on three occasions. Return, Exs. E-G. On February 2, 2005, Respondents concluded that Petitioner could not be released on supervision because, "you have demonstrated your inability and/or lack of respect for the laws of this country as is reflected in your criminal and immigration record ."Return, Ex. E. Respondents did not interview Petitioner before the February 2, 2005, custody determination, and did not identify Petitioner as a flight risk or a danger to the community at the time. Return, Ex. E. On November 1, 2005, Respondents concluded that Petitioner could not be released on supervision because he was considered a "flight risk." Return, Ex. F. Respondents did not interview Petitioner before the November 1, 2005, custody determination, but noted that Petitioner had a place to live, close family ties, and employment prospects in the United States. Return, Ex. F. Respondents also concluded that Petitioner did not meet any of the criteria for continued detention pursuant to 8 C.F.R. § 241.14. Return, Ex. F. On November 8, 2006, Respondents concluded that Petitioner could not be released on supervision because he was considered "a threat to the community," and a "flight risk." Return, Ex. G. Respondents did not interview Petitioner before the November 8, 2006, custody determination. Return, Ex. G.

*3 During each of the three internal custody reviews, Respondents indicated that Petitioner was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

being detained as an alien removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).*See* Return, Exs. E-G.

Petitioner has not received a bail hearing before an IJ during his more than four year detention. Pet., ¶ 31.

## DISCUSSION

Petitioner contends that he should be released pending resolution of his Petition for Review in the Court of Appeals for the Ninth Circuit. Petitioner contends that he is being detained indefinitely under the general detention statutes in violation of those statutes and the Constitution as articulated in *Zadvydas v. Davis,* 533 U.S. 678 (2001), *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005), and *Nadarajah v. Gonzales,* 433 F.3d 1069 (9th Cir.2006). Petitioner contends that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Petitioner further contends that the sheer length of his detention-over four years as of the date of this Order-violates his right to due process. Petitioner contends in the alternative that he is entitled to a bail hearing before an immigration judge.

Respondents contend that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a), and that *Tijani* and *Nadarajah* do not apply to discretionary detention under 8 U.S.C. § 1226(a). Respondents further contend that the delay in removing Petitioner is due to Petitioner's Petition for Review and motion for a stay of removal in the Court of Appeals for the Ninth Circuit, and that the delay is not attributable to Respondents. Respondents contend that Petitioner's release is reasonably foreseeable and that the length of Petitioner's detention does not violate due process.

## I. Jurisdiction

Pursuant to 28 U.S.C. § 2241, alien detainees can properly challenge "the extent of the Attorney General's authority" to detain a removable alien un-

der the general detention statutes. *Zadvydas v. Davis,* 533 U.S. 678, 687-89 (2001); *see also Denmore v. Kim,* 538 U.S. 510, 516-17 (2003). Whereas here, an administrative order of removal is not final, "habeas corpus jurisdiction remains in the district court ...." *Nadarajah v. Gonzales,* 443 F.3d 1069, 1075-76 (9th Cir.2006); *see also* 8 U.S.C. § 1231(a)(1) (describing how a removal order becomes final).

## II. Respondents' Authority to Detain Petitioner

Respondents contend that Petitioner is currently being detained by the Department of Homeland Security (DHS) pursuant to its discretionary authority under 8 U.S.C. § 1226(a)(1). Respondents explain that DHS detained and charged Petitioner in July of 2003 as a criminal alien subject to deportation for commission of an aggravated felony, and that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B) between July 10, 2003, the original date of detention, and July 19, 2004, the date that the Bureau of Immigration Appeals (BIA) affirmed the IJ's order of removal. Return at 2-3. Respondents contend that the statutory authority to detain Petitioner changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner appealed the decision of the BIA to the Court of Appeals for the Ninth Circuit. Return at 4-5 ("Detention authority changes administratively when the removal order becomes administratively final."). Respondents contend that an alien cannot be detained pursuant to 8 U.S.C. § 1226(c) during the time that the alien's appeal from an order of removal is pending in the Court of Appeals.

*4 Petitioner does not address whether 8 U.S.C. § 1226(a) or 8 U.S.C. § 1226(c) is the proper basis for Petitioner's detention, but Petitioner acknowledges Respondents' contention that Petitioner is currently being discretionarily detained pursuant to 8 U.S.C. § 1226(a).

8 U.S.C. § 1226 provides for the discretionary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and mandatory detention of removable aliens by the Attorney General. 8 U.S.C. § 1226(a) outlines the Attorney General's discretionary power to detain aliens, and provides that the Attorney General may arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States."8 U.S.C. § 1226(a). Those aliens detained pursuant to 8 U.S.C. § 1226(a) may be released on bond in the discretion of the Attorney General. *See*8 U.S.C. § 1226(a) (2).8 U.S.C. § 1226(c) provides for the mandatory detention of certain aliens, including aliens who are removable by reason of having committed an aggravated felony pursuant to 8 U.S.C. § 1227(a) (2)(A)(iii) and 8 U.S.C. § 1101(a)(43).*See*8 U.S.C. § 1226(c)(1)(B). Aliens subject to mandatory detention under 8 U.S.C. § 1226(c) must be detained by the Attorney General, and are not statutorily entitled to release on bond during the removal period except under the limited circumstances outlined in 8 U.S.C. § 1226(c)(2), which are not relevant here.[FN2]*See*8 C.F.R. § 236.1(c)(1) ("[N]o alien described in section 236(c)(1) of the Act may be released from custody during removal proceedings except pursuant to section 236(c)(2).").

> FN2. An alien mandatorily detained pursuant to 8 U.S.C. § 1226(c), could also be released by the Attorney General if the Attorney General determined that the length and circumstances of the alien's detention no longer was authorized by 8 U.S.C. § 1226(c) or violated the United States Constitution. *See Tijani*, 443 F.3d at 1242 ("[W]e interpret the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens;"'"it constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal.").

Respondents concede that Petitioner was detained and charged in July 2003 as an alien subject to removal for conviction of an aggravated felony

pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(g), and Petitioner does not dispute that he was convicted in California state court of two counts of First Degree Burglary in April of 1997. Respondents likewise concede that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) during his administrative removal proceedings before the IJ and BIA. However, Respondents argue that Petitioner's current detention is not pursuant 8 U.S.C. § 1226(c) because Petitioner's detention changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner appealed the decision of the BIA to the Court of Appeals for the Ninth Circuit.

Aside from citing to Code of Federal Regulation provisions which do not discuss the effect of judicial review on mandatory detention under 8 U.S.C. § 1226(c), *see* Return at 4-5, citing 8 C.F.R. §§ 1003.19, 1003.39, 236.1(c)(1), Respondents do not provide case or statutory support for their argument that Petitioner's detention changed administratively from 8 U.S.C. § 1226(c) to 8 U.S.C. § 1226(a) when Petitioner filed a Petition for Review with the Court of Appeals for the Ninth Circuit. Indeed, nothing in the text of 8 U.S.C. § 1226(c) limits mandatory detention to administrative removal proceedings as opposed to judicial removal proceedings, and no part of 8 U.S.C. § 1226 distinguishes between administrative and judicial review of an IJ's order of removal. A review of the relevant statutory scheme, including the Code of Federal Regulations, reveals that aliens subject to discretionary detention under 8 U.S.C. § 1226(a) are eligible for release on bond and can appeal bond decisions to an IJ-two options statutorily unavailable to aliens subject to mandatory detention under 8 U.S.C. § 1226(c).*See*8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(1), 236.1(d), 1003.19(a). If this Court were to adopt Respondents' arguments, however, such opportunities for release would be readily available to all aliens otherwise subject to mandatory detention despite clear language in 8 C.F.R. § 236.1(c)(1) precluding release of mandatorily detained aliens and the important policies behind

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

mandatory detention outlined in *Denmore v. Kim,* 538 U.S. at 528.

*5 After reviewing a number of cases, it is evident that courts view the continued detention of an alien after the alien has sought judicial review of an order of removal to remain statutorily authorized by the subpart of 8 U.S.C. § 1226 that authorized the detention before judicial review. For instance, in *Madrane v. Hogan,* 05-CV-2228, 2007 U.S. Dist. LEXIS 7970, *4-6, 8 (M.D.Pa. Feb. 5, 2007), a removable alien was detained pursuant to 8 U.S.C. § 1226(c), and thereafter filed a Petition for Review with the United States Court of Appeals and a Petition for Writ of Habeas Corpus in the district court. In evaluating the alien's Petition for Writ of Habeas Corpus, the government argued and the district court agreed that the alien was "subject to pre-final order detention pursuant to § 1226(c)(1)(B)" while awaiting "a decision from the United States Court of Appeals on his petition for review of a final order of removal."*Id.* at 2-4, 8;*see also Marks v. Clark,* Case No. C06-1796-RSM, 2007 U.S. Dist. LEXIS 53026, *8-11 (W.D.Wash. May 29, 2007) (alien is detained pursuant to 8 U.S.C. § 1226(c) during pendency of alien's Petition for Review in Ninth Circuit); *Singh v. Clark,* 2007 U.S. Dist. LEXIS 50237, *8-11 (W.D.Wash. Feb. 13, 2007) (same). Similarly, in *Gamez-Villagrana v. Gonzales,* No. 05-75441, 2007 U.S.App. LEXIS 18854 (9th Cir. Aug. 2, 2007)[FN3], the Court of Appeal for the Ninth Circuit evaluated an alien's Petition for Review and noted that the alien had been detained pursuant to 8 U.S.C. § 1226(c) during the time period that the Petition for Review was pending in the Court of Appeals. *Id.* at 3 ("We note that petitioner has now been in the custody of the Attorney General, pursuant to INA § 236(c) ... for more than three years.").

> FN3. Pursuant to Court of Appeals for the Ninth Circuit Rule 36-3, this unpublished Ninth Circuit opinion may be cited, but is not binding "precedent."

Some courts have concluded that an alien's de-

tention pending judicial review of an order of removal was pursuant to 8 U.S.C. § 1226(a).*See, e.g., Azeke v. Gonzales,* No. C-07-0709 MMC, 2007 U.S. Dist. LEXIS 33815, *1-3 & fn. 4 (N.D.Cal. Apr. 25, 2007). However, those cases do not stand for the proposition that an alien's detention pending judicial review of an administrative order of removal changes administratively to 8 U.S.C. § 1226(a) as proposed by Respondents. Rather, those cases stand for the proposition that an alien subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) before judicial review, remains subject to detention under 8 U.S.C. § 1226(a) during the pendency of judicial review. Accordingly, while it is true that the alien in *Azeke* was subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) pending judicial review, it was not because the statutory basis for the detention changed administratively to 8 U.S.C. § 1226(a)-rather, it was because the alien in *Azeke* was not subject to mandatory detention under 8 U.S.C. § 1226(c) for the charge of overstaying his visa.*Azeke,* No. C-07-0709 MMC, 2007 U.S. Dist. LEXIS 33815, *1-3 & fn. 4 (N.D.Cal. Apr. 25, 2007).

*6 DHS charged Petitioner with removability for being a criminal alien convicted of an aggravated felony, and Petitioner concedes that his convictions for burglary constitute aggravated felonies. *See* 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101(a)(43) (g); Return, Ex. B. Accordingly, the Court concludes that Petitioner is subject to detention pursuant to 8 U.S.C. § 1226(c)(1)(B) until the Court of Appeals for the Ninth Circuit rules on Petitioner's pending Petition for Review and lifts the stay of deportation. *See Marks,* Case No. C06-1796-RSM, 2007 U.S. Dist. LEXIS 53026, *8-11 (W.D. Wash. May 29, 2007; *see also* 8 U.S.C. § 1231(a) (defining the removal period).

**II. Whether 8 U.S.C. § 1226(c) Authorizes Petitioner's Continued Detention For Over Four Years**

**A. Background**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

Page 6

In 2003, the United States Supreme Court held that mandatory detention of an alien pursuant to 8 U.S.C. § 1226(c) was a "constitutionally permissible" part of the removal process for the "limited period" necessary to complete removal proceedings. *Denmore v. Kim,* 538 U.S. at 526, 531. The Court distinguished *Zadvydas v. Davis,* a case in which the Supreme Court held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, on the grounds that (1) an alien detained for the limited period necessary to effect removal pursuant to 8 U.S.C. § 1226(c) was not detained indefinitely, and (2) mandatory detention pursuant to 8 U.S.C. § 1226(c) was generally of a much shorter duration than "post-removal-period detention" pursuant to 8 U.S.C. § 1231-"in the majority of cases [mandatory detention pursuant to 8 U.S.C. § 1226(c) ] lasts for less than the 90 days we considered presumptively valid in *Zadvydas."Denmore,* 538 U.S. at 527-31. With respect to detention pursuant to 8 U.S.C. § 1226(c), the Supreme Court cited statistics from the Executive Office for Immigration Review and noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."*Denmore,* 538 U.S. at 530. Though the *Denmore* Court characterized constitutional detention pursuant to 8 U.S.C. § 1226(c) as "limited" and "brief," it did not explicitly limit the length of mandatory detention pursuant to 8 U.S.C. § 1226(c), and did not articulate a presumptively reasonable length of detention pursuant to 8 U.S.C. § 1226(c) as it did in *Zadvydas* for detention pursuant to 8 U.S.C. § 1231.[FN4]*Denmore,* 538 U.S. at 526, 531;*see also Madrane v. Hogan,* No. 1:05-CV-2228, 2007 U.S. Dist. LEXIS 7970, *9 (M.D.Pa. Feb. 7, 2007) (detailing *Denmore's* references to "brief" and "limited" detention pursuant to 8 U.S.C. § 1226(c)).

> FN4. In *Zadvydas,* the United States Supreme Court held that a detention of six months or less pursuant to 8 U.S.C. § 1231

is presumptively reasonable. *Zadvydas,* 533 U.S. at 700-01.

Three years after *Denmore,* the Court of Appeals for the Ninth Circuit addressed a habeas petition filed by an alien who had been mandatorily detained pursuant to 8 U.S.C. § 1226(c) for "two years and four months." *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005). Distinguishing *Denmore* on the grounds that the alien in *Denmore* conceded removability, the Court of Appeals concluded that 8 U.S.C. § 1226(c) applied to "expedited" removal proceedings, and remanded the petition to district court with instructions to grant the writ unless the Attorney General established that the alien was a flight risk or a danger to the community in a bail hearing before an IJ.*Tijani,* 430 F.3d at 1242. The Court of Appeals concluded that "two years and four months of process is not expeditious," and cited *Zadvydas* for the proposition that "it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal."*Tijani,* 430 F.3d at 1242;*see also Zadvydas,* 533 U.S. at 690. The Court referenced the "year or more" of time necessary for judicial review to support the Court's granting of the writ. *Tijani,* 430 F.3d at 1242.

*7 Less than a year after *Tijani,* the Court of Appeals for the Ninth Circuit again addressed the scope of detention pursuant to general immigration statutes in *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir.2006). Rejecting the government's contention that *Denmore v. Kim* authorized indefinite detention, the Court of Appeals held that, "general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period."*Nadarajah,* 443 F.3d at 1076, 1078, 1080-81. The Court further held that detention pursuant to general detention statutes must be

> for a reasonable period, and only if there is a significant likelihood of removal in the reasonably foreseeable future. After a presumptively reasonable six-month detention, once the alien provides

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 7
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

*Id.* at 1079.The *Nadarajah* Court held that a detention of nearly five years is "plainly unreasonable under any measure." *Id.* at 1080.

**B. The Parties' Arguments**

Citing *Zadvydas, Tijani,* and *Nadarajah,* Petitioner contends that his continued detention is indefinite and unreasonable, and that his removal is not significantly likely in the reasonably foreseeable future. Specifically, Petitioner argues that he is not likely to be removed because (1) his Petition for Review in the Ninth Circuit may well succeed, and (2) El Salvador is unlikely to issue travel documents for Petitioner because Petitioner was adopted by American citizens at age six months and moved to the United States. Petitioner contends that the sheer length of his detention without a bail hearing is unreasonable and violates due process, and at the very least, entitles him to a bail hearing before an IJ under *Tijani.*

Respondents contend that Petitioner's detention is not indefinite, and note that the majority of Petitioner's detention is attributable to Petitioner's filing of a Petition for Review in the Court of Appeals for the Ninth Circuit. Respondents contend that delays pending judicial review are not attributable to the government. Respondents further contend that *Nadarajah* controls the analysis, and argue that *Nadarajah* displaced *Tijani.*With respect to Petitioner's request for a bail hearing, Respondents contend that they afforded Petitioner three constitutionally adequate internal custody reviews.

**C. Analysis**

In light of *Tijani's* holding that 8 U.S.C. § 1226(c) authorizes only "expedited" removal proceedings, and *Nadarajah's* holding that detention

pursuant to general immigration statutes must be "reasonable" in the first instance, the Court must determine whether Petitioner Jess Mustanich's removal proceedings have been "expeditious," and whether his continued detention without a bail hearing is "reasonable." *Tijani,* 430 F.3d at 1242;*Nadarajah,* 433 F.3d at 1079-80. In *Denmore,* the United States Supreme Court held that a six month detention was authorized by 8 U.S.C. § 1226(c), and thus, at minimum, six months must be considered reasonable and expeditious. *Denmore,* 538 U.S. at 530-01. In *Tijani,* the Court of Appeals held that a removal proceeding of two years and four months was not "expeditious," and granted the petitioner a bail hearing. *Tijani,* 430 F.3d at 1242. Of the two years and four months at issue in *Tijani,* at least some of the time accrued while the petitioner's order of removal was before the Ninth Circuit. *Id.* In *Nadarajah,* the Court of Appeals held that a five year detention was "plainly unreasonable by any measure." *Nadarajah,* 443 F.3d at 1080.

*8 Respondents have detained Petitioner for more than four years pursuant to 8 U.S.C. § 1226(c). Seven months accrued during proceedings before the IJ, five-and-a-half months during proceedings before the BIA, and approximately thirty-six months during proceedings before the Court of Appeals for the Ninth Circuit.

In *Denmore,* the Supreme Court noted that removable aliens appeal to the BIA in only 15% of cases involving detention pursuant to 8 U.S.C. § 1226(c), and that where an alien appeals an order of removal to the BIA, mandatory detention generally lasts only five months. *Denmore,* 538 U.S. at 530. Here, Petitioner's proceedings before the IJ and the BIA lasted approximately 12 1/2 months, 7 1/2 months longer than in the typical case. Respondents do not set forth facts which establish that Petitioner is responsible for delay during the IJ and BIA proceedings. Accordingly, the length of detention during proceedings before the IJ and the BIA weighs against a finding that Petitioner's removal proceedings and detention have been "expeditious" and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

"reasonable ." *Tijani,* 430 F.3d at 1242;*Nadarajah,* 433 F.3d at 1079-80.

The majority of Petitioner's detention accrued after Petitioner appealed the order of the BIA to the Court of Appeals for the Ninth Circuit. Respondents argue that this time is not attributable to Respondents because Petitioner appealed to the Ninth Circuit and filed a motion to stay deportation. Respondents contend that detention during judicial review of a BIA's decision is irrelevant in evaluating the length of an alien's detention in the context of a habeas petition. Petitioner contends that the sheer length of his detention during judicial review is relevant to whether his detention is reasonable.

Whether detention pending judicial review can be considered in assessing the reasonableness of an alien's mandatory detention pursuant to 8 U.S.C. § 1226(c), and if so, how it should be considered, is a question that has not been explicitly addressed by either the United States Supreme Court or the Court of Appeals for the Ninth Circuit. However, the Court of Appeals for the Ninth Circuit referenced the period of judicial review which had elapsed and that which was yet to come in support of its holding in *Tijani* that the alien's removal proceedings were not expeditious, and it is apparent that the *Tijani* Court included at least some time which accrued during judicial review in its conclusion that the petitioner had been detained for two years and four months. *Tijani,* 430 F.3d at 1242.[FN5]As in *Tijani,* some district courts have considered detention pending judicial review in determining whether 8 U.S.C. § 1226(c) authorized a prolonged detention. *See Martinez-Herrera v. Crawford,* No. CIV 07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEX-IS 53334, *6-8 (D.Ariz. Jun. 20, 2007) (noting that the Ninth Circuit considered detention pending judicial review in evaluating the detention in *Tijani* );*Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), Doc. # 22 at 4 (D.Ariz. Apr. 13, 2007) adopted by *Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), 2007 U.S. Dist. LEX-IS 57249 (D.Ariz. Aug. 3, 2007) (considering 2

years in which alien was detained pending judicial review); *but see Singh v. Gonzales,* No. CV 06-135-PHX-JAT, 2007 U.S. Dist. LEXIS 27837, *6 (D.Ariz. Apr. 13, 2007) (noting that petitioner's continued custody is the result of his own actions in appealing to the Ninth Circuit). After reviewing the relevant case law, and particularly *Tijani,* the Court concludes that it can and must consider periods of detention which accrue pending judicial review in determining whether removal proceedings and detention pursuant to 8 U.S.C. § 1226(c) are expeditious and reasonable.

> FN5. In *Gamez-Villagrana v. Gonzales,* No. 05-74441, 2007 U.S.App. LEXIS 18854, *3-4 (9th Cir. Aug. 2, 2007), the Court of Appeal noted with approval the consideration of periods of detention which accrue during proceedings before the Court of Appeal.

*9 The Court finds unpersuasive Respondents' argument that because Petitioner appealed to the Court of Appeals for the Ninth Circuit and sought a stay of removal, the period of Petitioner's detention which accrued pending judicial review should not be considered. As noted above, other courts, including the Court of Appeal for the Ninth Circuit in *Tijani,* have considered periods of detention which accrue pending judicial review in assessing the merits of a habeas petition. *Tijani,* 430 F.3d at 1242;*see also Ly v. Hanson,* 351 F.3d 263, 272 (6th Cir.2002) (holding that the entire removal process, and not just the original deportation hearing, is subject to the constitutional requirement of reasonableness). In addition, even if the court were permitted to ignore periods of detention which accrue during judicial appeal under certain circumstances, the court would still be required to consider those periods where, as here, (1) a petitioner asserts a "substantial" non-frivolous claim to citizenship, *Tijani,* 430 F.3d at 1247 (Tashima, J., concurring), (2) a petitioner has not frivolously delayed administrative or appellate proceedings, and (3) a respondent delays the proceedings on appeal. Here, Peti-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tioner has at least a "substantial" claim to citizenship, especially considering that he was adopted by American citizens at age six-months and moved to the United States, and it is evident that Petitioner has not delayed the administrative or judicial removal proceedings. Respondents, on the other hand, twice failed to file the administrative record when ordered to do so by the Court of Appeals, and once sought a three month extension of time to file the record. Return, Ex. H. Though originally required to file the administrative record on or before October 26, 2004, Respondents did not file the record until January 28, 2005-three months after it was originally due. Return, Ex. H. Respondents also repeatedly delayed in responding to the motion for a stay of deportation, and not only failed to comply with Court of Appeals' orders requiring a response to the motion to stay, but sought, and were granted, a three month extension to file a response to the motion which they then failed to comply with. Return, Ex. H. As noted by the Court of Appeals for the Sixth Circuit, "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels .... " *Ly,* 351 F.3d at 272. On this record, there is no doubt that the Court must consider the periods of Petitioner's detention which accrued while Petitioner appealed to Court of Appeal for the Ninth Circuit.

Notwithstanding the length of Petitioner's detention, Respondents cite *Nadarajah* and argue that Petitioner should not be released or afforded a bail hearing because his "removal remains reasonably foreseeable." Return at 6; *see also Nadarajah,* 433 F.3d 1078. However, this Court cannot determine when the Court of Appeals for the Ninth Circuit might adjudicate Petitioner's Petition for Review, and even if the Court of Appeals were to adjudicate the Petition, it is not clear that the order of the BIA would be affirmed as opposed to reversed and remanded. As noted above, Petitioner has at least a "substantial" claim that he should be considered an American citizen, and the Court of Appeals for the Ninth Circuit has recently remanded a similar case to district court and held that "the Constitution is violated when a person with a non-frivolous claim to U.S. citizenship is deported without receiving a judicial determination of that claim."*Gamez-Villagrana v. Gonzales,* No. 05-75441, 2007 U.S.App. LEXIS 18854, *2 (9th Cir. Aug. 2, 2007), citing *Rivera v. Ashcroft,* 394 F.3d 1129, 1140 (9th Cir.2005). Furthermore, while *Nadarajah* held that the likelihood of removal was relevant, it also held that a detention had to be "reasonable" in the first instance. *Nadarajah,* 443 F.3d at 1079.

*10 As noted by the United States Supreme Court in *Zadvydas,* when determining the reasonableness of an alien's detention, a court should consider that "as the period of ... confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."*Zadvydas,* 533 U.S. at 701. Here, Petitioner has been in Respondents custody for well over 4 years, during which time Petitioner's administrative proceedings took longer than usual, and Respondents significantly delayed in the Court of Appeals. The Court has been unable to find a single case in which a court upheld either a more than four year mandatory detention pursuant to 8 U.S.C. § 1226(c) as reasonable, or a removal proceeding of the same length as expeditious. The Court also concludes that Petitioner has a non-frivolous claim to citizenship, which may warrant further judicial proceedings on remand. On this record, and particularly given the length of Petitioner's detention, the Court concludes that Petitioner's removal proceedings are not "expeditious," and his continued detention without bail is not "reasonable." *See Tijani,* 430 F.3d at 1242 (two year and four month removal proceeding not expeditious); *Nadarajah,* 433 F.3d at 1079-80 (five year detention plainly unreasonable); *see also Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), 2007 U.S. Dist. LEXIS 57249 (D.Ariz. Aug. 3, 2007) (2 1/2 year detention, some of which accrued during judicial review, unreasonable under *Tijani* );*Martinez-Herrera v. Crawford,* No. CIV

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2819732 (S.D.Cal.)
(Cite as: Slip Copy)

07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEX-IS 53334, *6-7 (D.Ariz. Jun. 20, 2007) (21 month detention unreasonable under *Tijani* );*Abeogba v. ICE,* No. CV 05-2247-PHX-MHM (LOA), 2006 U.S. Dist. LEXIS 51319 (D.Ariz. July 18, 2006) (5 year detention unreasonable). As noted in *Tijani,* it is "constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal."*Tijani,* 430 F.3d at 1242.

### III. Bail Hearing

Petitioner contends that his unreasonable detention entitles him to release. However, consistent with *Tijani,* the government should be given the opportunity to establish that Petitioner is a flight risk or a danger to the community in a bail hearing before an IJ. *Tijani,* 430 F.3d at 1242;*see also Singh v. Crawford,* No. CV 06-2194-PHX-MHM (GEE), 2007 U.S. Dist. LEXIS 57249 (D.Ariz. Aug. 3, 2007) (requiring bail hearing before release); *Martinez-Herrera v. Crawford,* No. CIV 07-0267-PHX-NVW (DKD), 2007 U.S. Dist. LEXIS 53334, *6-7 (D.Ariz. Jun. 20, 2007) (same); *Abeogba v. ICE,* No. CV 05-2247-PHX-MHM (LOA), 2006 U.S. Dist. LEXIS 51319 (D.Ariz. July 18, 2006) (same).

### CONCLUSION

The Court concludes that Petitioner's more than four year detention is unreasonable and his removal proceedings not "expeditious." Accordingly, Petitioner's Petition for Writ of Habeas Corpus is hereby granted in part and denied in part.

**\*11 IT IS HEREBY ORDERED** that:
(1) Petitioner's request for release is **DENIED.**
(2) Petitioner's request for a bail hearing before an IJ is **GRANTED.**
(3) Respondents shall provide Petitioner with a bail hearing before an IJ within 10 days of this Order.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Mustanich v. Gonzales
Slip Copy, 2007 WL 2819732 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                          Page 1
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

**H**
Macalma v. Chertoff
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Paul Guevarra MACALMA, Petitioner,
v.
Michael HERTOFF, Secretary of Homeland Security, et.al., Respondents.
**No. 06CV2623 WQH (AJB).**

May 22, 2007.

Federal Defenders, Zandra Lopez, Federal Defenders of San Diego, San Diego, CA, for Petitioner.
US Attorney CV, Samuel William Bettwy, US Attorneys Office Southern District of California Civil Division, San Diego, CA, for Respondents.
HAYES, Judge.
    *1 The matter before the Court is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Paul Guevarra Macalma. (Doc. # 1.)

### BACKGROUND

    Petitioner Paul Guevarra Macalma is a native and citizen of the Philippines. Petitioner was born in Manila on April 24, 1981. Petitioner's father Benjamin Macalma left the Philippines and was admitted to the United States as a lawful permanent resident on December 31, 1981. Benjamin Macalma became a United States citizen by naturalization on June 18, 1993.

    On November 16, 1996, Petitioner entered the United States as a lawful permanent resident.

    On September 20, 2000, Petitioner was convicted in California state court of receiving stolen property in violation of California Penal Code § 496(a) and "sentenced to three years of probation which was formally revoked on September 16, 2003."(Government's Return, Doc. # 6 at 3.)

    On November 20, 2003, the Department of Homeland Security took custody of Petitioner and placed him in removal proceedings. Based upon his September 20, 2000 conviction for receiving stolen property, Petitioner was charged with deportability under Section 237(a)(2)(A)(i) for having been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. In the hearing before the Immigration Judge, Petitioner claimed United States citizenship by acquisition through his naturalized father.

    On March 10, 2004, the Immigration Judge found that Petitioner was not a citizen and ordered him removed to the Philippines. Petitioner filed an appeal to the Board of Immigration Appeals.

    On October 22, 2004, the Board of Immigration Appeals upheld the decision of the Immigration Judge that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a).

    On November 16, 2004, Petitioner filed a Petition for Review in the Court of Appeals for the Ninth Circuit along with a motion to stay deportation pending resolution of the appeal. *Macalma v. Gonzales,* No. 04-75821.

    On June 14, 2005, Respondents filed a statement of non-opposition to the motion for stay of removal.

    On August 5, 2005, the Court of Appeals filed an order which appears in the docket in part as follows: "respondent has filed a statement of non-opp to mtn for stay of removal; temporary stay of removal continues in effect until the issuance of the mdt or further order of the ct." (Docket # 6, Exhibit 12 at 5.)

    On February 27, 2006, Petitioner filed his opening brief in the Court of Appeals along with a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

motion for appointment of counsel.

On March 21, 2006, the Court of Appeals denied the motion for appointment of counsel and ordered Respondents to file an answering brief within 30 days.

On June 5, 2006, Respondents filed a motion to remand to the Board of Immigration Appeals for reconsideration of the February 28, 2005 determination that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a). Respondents requested that the Court of Appeals remand the case to the Board "so that it can review this case in light of the Court's decision in *Minaysan [v. Gonzales,* 401 F.3d 1069 (9th Cir.2005) ]." (Doc. # 6, Exhibit 16 at 2.)

**\*2** On August 23, 2006, the Court of Appeals entered an order which appears on the docket in part as follows: "unless an opp to the mtn [to remand] is filed within 14 days of this order, the mtn will be granted."(Doc. # 6, Exhibit 14 at 7.)

On September 22, 2006, the Court of Appeals granted Respondents' "unopposed" motion to remand and stated "the parties are deemed to have agreed that the court's remand order shall stay petitioner's removal."(Doc. # 6, Exhibit 14 at 7.)

On November 28, 2006, Petitioner filed the Petition for Writ of Habeas Corpus now pending before this Court. (Doc. # 1.)

On December 7, 2006, this Court filed an Order to Show Cause why the Petition should not be granted ordering the Respondents to file a written return no later than December 29, 2006. (Doc. # 2.)

On January 23, 2007, this Court filed a Second Order to Show Cause upon Respondents' failure to comply with the Court's order filed on December 7, 2006. This Court ordered Respondents to file a written return no later than January 31, 2007. (Doc. # 3.)

On January 30, 2007, Respondents filed a Response to the Second Order to Show Cause stating that the Petition had not been served upon Respondents; that the Order to Show Cause filed on December 7, 2006 had not been received by Counsel for Respondents; and that the Second Order to Cause was received on January 29, 2007. Respondents requested and the Court allowed additional time to file a return. (Docs. # 4 and 5.)

On March 5, 2006, Respondents filed a Return in Opposition to the Petition for Writ of Habeas Corpus. (Doc. # 6.)

On March 9, 2007, the Board of Immigration Appeals issued a ruling "once again dismiss[ing] the appeal. (Doc. # 13, Exhibit 25 at 2.) The Board of Immigration Appeals considered *"Minaysan* to be materially distinguishable from the present case for a number of reasons."(*Id.*) The Board concluded that Petitioner had not met his burden of proving that he derived United States citizenship through either of his parents. (*Id.* at 3.)

On March 12, 2007, the American Civil Liberties Union filed a motion for leave to file a brief as *Amicus Curiae* which was granted by this Court. (Docs. # 7 and 10.)

On March 19, 2007, Petitioner filed a motion to reopen before the Board of Immigration Appeals.

On April 18, 2007, Respondents filed the Government's Opposition to *Amicus Curiae* Brief. (Doc. # 13).

On May 11, 2007, the American Civil Liberties Union filed a Reply to the Government's Opposition Brief. (Doc. # 16).

On May 3, 2007, Petitioner filed a Traverse. (Doc # 15.)

### CONTENTIONS OF THE PARTIES

Petitioner contends that he is entitled to release

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                   Page 3
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
(Cite as: Slip Copy)

from the custody of Respondents under appropriate conditions of supervision. Petitioner contends the case law supports the exercise of discretion in releasing deportees during the pendency of colorable challenges to the proceedings underlying their removal. Petitioner requests that the Court order Respondents to release him from custody under appropriate conditions of supervision.

**\*3** The *Amicus Curiae* Brief in Support of the Petitioner's Writ of Habeas Corpus contends that the Petitioner's prolonged detention is contrary to the immigration laws and the United States Constitution for the following three reasons: 1) there is no statute which authorizes Petitioner's prolonged detention of more than three years, 2) the immigration statutes and due process require that Petitioner be afforded a hearing to determine whether his detention is justified, and 3) the sheer length of Petitioner's detention violates the Due Process Clause of the United States Constitution. The *Amicus Curiae* Brief asserts that Petitioner's detention under 8 U.S.C. § 1226(c)(1)(C) was not authorized at any time because he was sentenced to three years of probation and was not sentenced to at least one year imprisonment as required pursuant to Section 1226(c)(1)(C). Even if Section 1226(c) applies, the *Amicus Curiae* Brief asserts that this case is not distinguishable in any meaningful way from the case of *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005) in which the Court of Appeals concluded that detention of two years and eight months was not within the authority conferred by Section 1226(c). The Amicus Curiae Brief requests that the Court grant the Writ of Habeas Corpus and order Petitioner's immediate release under reasonable conditions of supervision, or, in the alternative, order the Respondents to hold a constitutionally adequate hearing before an immigration judge to determine whether the continued detention is justified.

Respondents contend that the Petition should be denied on the grounds that detention pending the completion of removal proceedings is mandatory for certain aliens who have committed specific criminal offenses. Respondents contend that Section 1226(c)(1)(C) mandates detention for Petitioner because he has been convicted of committing a crime involving moral turpitude and sentenced to at least one year of imprisonment. Respondents contend that there have been no inordinate delays in the administrative proceedings before the Immigration Judge and the Board of Immigration Appeals. Respondents contend that the *Tijani* case applies only to cases involving prolonged administrative removal proceedings and is not applicable to judicial delay. Respondents contend that Petitioner has the ability to prosecute his appeal from his home country and that he chose instead to pursue his claim through judicial review from within the United States making his detention voluntary. Respondents do not address the assertion that Section 1226(c) does not apply to Petitioner because he was not sentenced to at least one year imprisonment.

### DISCUSSION

Petitioner has been in the custody of the Secretary of the Department of Homeland Security and the Attorney General since November 20, 2003 pursuant to the authority conferred under 8 U.S.C. § 1226(c)(1)(C). Petitioner was ordered removed on March 10, 2004 and this order of removal has been stayed by order of the Court of Appeals up to the present time. This Court has jurisdiction under 28 U.S.C. § 2241 to determine a challenge to confinement on statutory and constitutional grounds which do not involve final orders of removal. *Nadarajah v. Gonzales,* 443 F.3d 1069, 1076 (9th Cir.2006). The final order of removal in this case has been stayed by the Court of Appeals and the resolution of the challenge to confinement does not involve a final order of removal.

**\*4** Under Section 1226(a), an alien charged with removability may, upon a warrant, be arrested and detained pending removal proceedings. Such an alien may, in the discretion of the Attorney General (now the Secretary of Homeland Security), be released on bond or on conditional parole, pending

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1516744 (S.D.Cal.)
**(Cite as: Slip Copy)**

Page 4

the completion of the removal proceedings, unless the alien falls within the categories of aliens described in Section 1226(c).

Petitioner is charged with being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) which provides for the deportation of a lawfully admitted alien who is convicted of a crime involving moral turpitude committed within five years after the date of admission and "is convicted of a crime for which a sentence of one year or longer may be imposed."Section 1227(a)(2)(A)(i)(II). Petitioner is held under the detention provisions of 8 U.S.C. § 1226(c)(1)(C) which provides that "the Attorney General shall take into custody an alien who-is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year."The documents submitted in this case do not establish that Petitioner has been "sentenced to a term of imprisonment of at least 1 year."8 U.S.C. § 1226(c)(1)(C). Respondent has not established that 8 U.S.C. § 1226(c)(1)(C) authorizes the mandatory detention of the Petitioner. Based upon the record in this case, Petitioner is entitled to a release hearing pursuant to the provisions of 8 U.S.C. § 1226(a).

IT IS HEREBY ORDERED that the Petition for Habeas Corpus is granted as follows: Respondents shall provide a release hearing to Petitioner pursuant to the provisions of 8 U.S.C. § 1226(a) within 10 days of the date of this order. The Court appoints the Federal Defender as counsel for Petitioner for the sole purpose of representation in this habeas action. Respondents shall file a status report in this case within 20 days of the date of this order. This case will remain open pending further order of this Court.

S.D.Cal.,2007.
Macalma v. Chertoff
Slip Copy, 2007 WL 1516744 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ORIGINAL

JS 44 (Rev. 3/99)

## CIVIL COVER SHEET

**FILED**

MAR 2 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

*Ibrahima Mbodji*
ICE EL CENTRO DETENTION CENTER

1115 N IMPERIAL AVE, EL CENTRO, CA 92243

**(b)** County of Residence of First Listed Plaintiff    IMPERIAL COUNTY
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS

MICHAEL CHERTOFF, ET AL

County of Residence of First Listed Defendant    SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
PRO SE

'08 CV 0517 JLS NLS

Attorneys (If Known)    (619) 557-5662
KAREN P. HEWITT, U.S. ATTY
ATTN: CIVIL PROCESS CLERK
880 FRONT STREET, SAN DIEGO, CA 92101

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 2241

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE    DOCKET NUMBER

DATE 03/22/08    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

