IBRAHIMA MBODJI
A98-807-641
ICE El Centro Detention Center
1115 N. Imperial Ave
El Centro, CA 92243



FILED
MAR 2 0 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIMA MBODJI,<br>[A98-807-641]<br>    Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, ROBERT RILLAMAS, OFFICER-IN-CHARGE,<br><br>    Respondents. | Civil Action No.<br><br>'08 CV 0517 JLS NLS<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION |

I.

**STATEMENT OF FACTS**

  The Petitioner is a native and citizen of Senegal. He came to the United States in February 2001, when he was nineteen years old. He was lawfully admitted on a tourist visa, but continued to reside in the United States beyond the expiration of his visa.

  After his admission to the United States, Petitioner entered into a relationship with a U.S. citizen, and they have a U.S. citizen child, who is now nearly three years old. The child was born out of wedlock. Petitioner has no criminal convictions.



Petitioner was taken into the custody of Respondents on July 18, 2006, which is the beginning of his present period of detention. On September 7, 2006, he was given a bond of $7,500, which he cannot afford to pay. After over six months in custody, on January 30, 2007, a removal hearing was held. The Government proceeded solely on a charge of overstaying his visa. The immigration judge found Petitioner removable and denied Petitioner's applications for withholding of removal under the Convention Against Torture due to his on his fear of physical harm and torture from Senegal officials if returned to his country. Petitioner argued that he is subject to physical harm due to religious persecution. Because Petitioner has fathered a child out of wedlock, in violation of Islamic Shari'a law, and so he would be subject to abuse by Senegalese officials.

Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals. Petitioner argued he should have been granted withholding under CAT due to religious persecution. The BIA affirmed on May 29, 2007.

Petitioner then filed a timely petition for review *pro se* with the Ninth Circuit Court of Appeals on June 22, 2007, in Case No. 07-72503. The same day, petitioner moved for a stay of deportation pending appeal; the Government filed an opposition to the stay on September 14, 2007. The Ninth Circuit granted the stay on October 5, 2007. Petitioner's opening brief was filed on December 31, 2007. The Government was ordered to file its brief by March 7, 2008.

Meanwhile, Respondents continue to hold Petitioner in custody, and his substantive due process right to liberty is improperly denied. Since Petitioner's appeal raises substantive arguments challenging his order of deportation which could result in complete relief from removal, continued indefinite detention while the review process takes its course is not warranted under the recent decisions in <u>Tijani v. Willis</u>, 430 F.3d 1241 (9th Cir. 2005), and <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069 (9th Cir. 2006), which held due process requires that civil detainees in Petitioner's situation are entitled to release from immigration custody during the pendency of their appeals. Accordingly, Petitioner has a meritorious claim for relief under § 2241 for release

from detention by respondents.

Currently, Petitioner has a **zero balance** in his custody trust account with no average monthly deposits. See <u>Prison Certificate</u>, Form CIV-67, attached to Motion to Proceed *In Forma Pauperis*. Since he is in custody, he does not have a source of income or employment. As a result, he cannot afford to retain counsel.

Additionally, Petitioner has not had any formal education in the United States, and he has had no legal training. See Declaration of James Fife in Support of the Petitioner's Motion, ¶¶ 15-16. Accordingly, Petitioner requests that this Court appoint the Federal Defenders of San Diego, Inc., to represent him in the instant habeas action. That office stands ready and able to assist the Petitioner in this Petition. See <u>id.</u> ¶¶ 3-6.

## II.

## ARGUMENT

## THIS COURT SHOULD APPOINT COUNSEL FOR THE PETITIONER.

Habeas corpus proceedings "are of 'fundamental importance . . . in our constitutional scheme because they directly protect our most valued rights.'" <u>Brown v. Vasquez</u>, 952 F.2d 1164, 1169 (9th Cir. 1991) (<u>quoting</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 827 (1977)) (citations and internal quotations omitted). Consequently, federal law permits a district court to appoint counsel in a habeas proceeding under 28 U.S.C. § 2241 when the "interests of justice so require," if a Petitioner has shown that he is unable to afford an attorney. 18 U.S.C. §3006A(a)(2)(B). To make this decision, this Court must "evaluate [1] the likelihood of success on the merits as well as [2] the ability of the Petitioner to articulate his claims <u>pro se</u> in light of the complexity of the legal issues involved." <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983); <u>accord</u> <u>Rand v. Rowland</u>, 113 F.3d 1520, 1525 (9th Cir. 1997).

As is indicated below, the Petitioner is highly likely to succeed on the merits of his claim, but will be unable to effectively articulate his claims through a <u>pro se</u> action, in light of his truncated educational

history and lack of legal training. See Declaration of James Fife, ¶¶ 15-16. The Petitioner cannot otherwise afford to retain counsel for the litigation of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Thus, the appointment of counsel is appropriate.

**A.      The Petitioner is Highly Likely to Succeed on the Merits of his Claim.**

The Ninth Circuit's decisions in <u>Tijani</u> and <u>Nadarajah</u> extend the Supreme Court's due process restrictions on indefinite detention laid down in <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689 (2001), and apply them to detainees subjected to prolonged detention and whose orders of removal are on review. These cases hold that it is "constitutionally doubtful" that the detention statutes permit lengthy periods of custody pending outcome of legal challenges. Under the authority of <u>Tijani</u> and <u>Nadarajah</u>, Petitioner is entitled to release on order of supervision pending resolution of his appeals.

In <u>Tijani</u>, the Court of Appeals reviewed a § 2241 habeas petition by a deportee who had been held in custody for 32 months awaiting the outcome of his appeals. <u>Tijani</u> held it was "constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." 430 F.3d at 1242. Distinguishing <u>Demore v. Kim</u>, 538 U.S. 510 (2003), because Tijani did not concede he was deportable, the Court ordered his release, unless he was provided with a bail hearing and found unsuitable for release under the usual factors of risk of flight or danger to the community. See <u>id.</u>; see <u>Kim</u>, 538 U.S. at 522-23. Moreover, <u>Kim</u> was grounded on the Supreme Court's assumption that the period of detention would be "brief," only that "necessary for his removal proceedings," which the Supreme Court estimated as roughly six weeks in duration on average, or five months if further review is sought. See <u>id.</u>; see <u>Kim</u>, 538 U.S. at 522-23, 530. As Tijani's detention while awaiting outcome of his appeals far exceeded these estimates of the constitutionally permitted "brief period" of detention, he was entitled to release proceedings under the <u>Zadvydas</u> principles. See <u>id.</u> Thus, Tijani was entitled to release on habeas corpus unless the government proved at a hearing before an immigration judge that the Petitioner was a flight

1 risk or danger to the community. See id.

2 In Nadarajah, the Ninth Circuit considered an indefinite detainee held under suspicion of terrorist affiliation. Nadarajah challenged his detention and was pursuing a claim for asylum, but the government relied on the silence of the asylum detention statute to detain Nadarajah while this litigation proceeded. See 443 F.3d at 1076-78. However, the Court held that the asylum detention statute was equally subject to the strictures of Zadvydas. See id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b), allowing release on bail pending appeal, apply to such immigration detentions. Id. at 1083. The usual standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal question and a balance of the hardships. Id. Moreover, the showing of probable success correspondingly lessens as the length of detention increases. Id. at 1083-84. In Nadarajah, the Court found the 52 months of detention were a great hardship that accordingly reduced the required showing of likelihood of success. Id.

Petitioner's case is factually similar to Tijani and Nadarajah, and therefore he too is entitled to consideration for release. Like Tijani, petitioner can raise his argument for release through the vehicle of a § 2241 petition, and he also can point to substantial arguments regarding his deportation proceeding. His petition for review in the Ninth Circuit argues that the immigration judge at the removal hearing erred in holding petitioner was ineligible for relief in the form of withholding under the Convention Against Torture. Petitioner argued that because he has fathered a child out of wedlock, he will be subject to official abuse on return to Senegal, since having children outside of marriage is a violation of the strict Shari'a laws of Islam. Senegal is 94% Muslim. See CIA, World Factbook–Senegal, https://www.cia.gov/library/publications/the-world-factbook/geos/sg.html (Feb. 28, 2008). Moreover, Islamic courts enforcing Shari'a operate independently of the secular courts under Senegalese law. See U.S. Dep't of States, Senegal: Country Reports on Human Rights Practices 2006, http://www.state.gov/g/drl/rls/hrrpt/2006/78754.htm (Mar. 6, 2007). Good cause exists for fear of official persecution if Petitioner were deported to Senegal. This claim would count

as a "substantial question" under the Tashima analysis in Tijani. Moreover, as Judge Tashima observed, the detainee need not show certainty of outcome to gain release, just that "a closer look is surely required." Tijani, 430 F.3d at 1248 (Tashima, J., concurring).

Also, as in Nadarajah, petitioner here can demonstrate a basis for release under the factors in Fed. R. App. P. 23(b). He raises substantive legal and factual questions. His continued loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardships, the Court in Nadarajah found that 52 months' detention was a very burdensome hardship which correspondingly lessened the required showing of likely success on appeal, and the 32 months of detention in Tijani was deemed excessive. Petitioner here has been in Respondents' custody for over **20 months**, over three times the presumptively reasonable time under Supreme Court case law. Moreover, because petitioner was ordered removed solely on the basis of overstaying his visa, he is not even subject to the mandatory detention provisions of 8 U.S.C. § 1226(c), unlike Nadarajah, whom ICE suspected of affiliation, at least, with a terrorist organization, and so potentially subject to mandatory detention. See 443 F.3d at 1073-74; 8 U.S.C. §§ 1226(c)(1)(D), 1227(a)(4)(B), & 1182(a)(3)(F).

Balancing the factors identified in case law for release of detainees while legal challenges are pending, Petitioner is entitled to release as much as the Petitioners in Tijani and Nadarajah. He is therefore likely to succeed on the merits of his claims, which supports appointment of counsel.

B. **The Petitioner Cannot Adequately Articulate His Claims in the Absence of Counsel, in Light of the Complexity of the Legal Issues Involved in His Petition for Habeas Relief Under Emerging Case Law.**

To weigh the Petitioner's ability to articulate his claims in the absence of counsel, a court must measure "the [Petitioner]'s ability to articulate his claims against the relative complexity of the matter." Rand, 113 F.3d at 1525. In addition, counsel may be appointed during federal habeas proceedings if the appointment of an attorney is "necessary for the effective utilization of discovery procedures,...[or] if an

evidentiary hearing is required." Weygandt, 718 F.2d at 954 (other internal citations omitted).[2]

As is indicated above, the instant case involves complex legal issues grounded in constitutional law, statutory interpretation, principles of jurisdiction, and administrative procedure. The relief established by Tijani and Nadarajah stem from substantive due process principles articulated in Zadvydas and subsequent Supreme Court cases. Although the trend in these cases is clear, the Ninth Circuit's application of Zadvydas and progeny to the case of detainees with substantive appeals is a recent development in this Circuit's case law. Precise articulation of the issues involved and the proper contours of relief in individual cases requires a thorough understanding of the cases and the historical development of this area of law. In short, it requires the knowledge and advocacy skills of a legal professional for proper presentation to this Court.

Since the Petitioner is in the custody of federal immigration officials, moreover, an analysis of immigration law is required. The Ninth Circuit has declared that "'[w]ith only a small degree of hyperbole, the immigration laws have been deemed second only to the Internal Revenue Code in complexity.'" United States v. Ahumada-Aguilar, 295 F.3d 943, 950 (9th Cir. 2002) (citations and internal quotations omitted). In most cases involving immigration law, "[a] lawyer is often the only person who could thread the labyrinth.'" Id. The absence of counsel during immigration proceedings will be prejudicial when an attorney could have assisted a litigant in seeking relief under applicable immigration laws, statutes, and cases. Id. at 951-52 (prohibiting the use of a deportation order during a subsequent prosecution for illegal re-entry because the absence of counsel affected the alien's ability to ascertain his eligibility for a waiver of deportation, the viability of a claim of United States citizenship, and his ability to obtain "special permission" to return to the United States after his deportation).

---

[2] The Federal Defenders of San Diego, Inc. drafted the instant pleading, as well as the petition for a writ of habeas corpus. Thus, this Court cannot conclude, based upon these pleadings, that the Petitioner has a firm grasp of the legal and factual issues involved in federal habeas proceedings.

Petitioner completed two years of college in Senegal, but has not had any formal education in the United States. Moreover, he has no background or familiarity with the legal system that would allow him to prosecute a petition for writ of habeas corpus dealing with the highly complex area of immigration law. Also, the particular claims raised by Petitioner under Tijani and Nadarajah relate to an emerging and actively evolving area of law at the intersection of two complex bodies of jurisprudence: administrative immigration law and the substantive law and procedure of habeas corpus. These are areas into which even experienced counsel may hesitate to tread, let alone an unaided layman.

The need for professional advocacy in ordinary Zadvydas cases has been repeatedly and consistently recognized by this Court in the past. See Fife Declaration and attached appendices. These orders show that it is the regular response of this Court to appoint counsel precisely for those in Petitioner's circumstances. The only difference between this and the other cases is that the legal issues here are significantly more complex. Intricate as regular Zadvydas cases can be, the present petition hinges on the scope and interpretation of recent and emerging Ninth Circuit case law. Petitioner's claims under Tijani and Nadarajah are based on very recent precedents, which to date have no subsequent, binding analysis or explication. Such discussion is currently evolving. The issues involved in this case are not well-settled principles which a layman can fully grasp and adequately present. This case engages the intertwined jurisprudence of immigration law and habeas corpus, two highly complex and unique fields of law. Moreover, Tijani/Nadarajah petitions have been vigorously contested in a number of district court decisions. See Appendix to Petition. A layman cannot be expected to digest the arguments and rulings in these various decisions and effectively relate them to the arguments likely to be raised by respondents. This is currently a very contentious area of law, one requiring the skills of trained counsel, not only to preserve Petitioner's right to due process, but also to ensure that the issues are fully and adequately aired, permitting this Court to make a correct legal decision on the claims. Proper consideration of a complex area of emerging law justifies

the appointment of counsel to represent Petitioner in this case.

The Petitioner's lack of expertise in legal issues warrants the appointment of counsel. The Petitioner arrived in the United States when he was 19 years old. He has not attended any education institution here. See Declaration of James Fife, ¶¶ 15-16. The absence of any formal legal background or training poses an obstacle to the Petitioner's understanding of the issues involved in the instant proceedings, and warrants the appointment of counsel to help him obtain the relief requested in his habeas petition. See id. ¶ 16. In addition, Petitioner's primary language is French, and English is a second language to him. See id. ¶ 13.

Additionally, the appointment of counsel may be appropriate during federal habeas proceedings if it is "necessary for the effective utilization of discovery procedures, . . . [or] if an evidentiary hearing is required." Weygandt, 718 F.2d at 954. The Respondents have information and documents relevant to the Petitioner's habeas petition, including information relating to his criminal history, his bail or parole history, his institutional history, the content of communications between federal immigration officials and the embassy of the Petitioner's native country, and other documents relating to his detention by respondents.

The Petitioner cannot effectively pursue and obtain discovery from respondents that he will need to adequately present his claims and suitability for relief without the assistance of counsel, in light of his limited education and lack of familiarity with the legal procedures involved in requesting and obtaining discovery. Moreover, the Petitioner cannot adequately review and evaluate his alien registration file (hereinafter "A-file") or evaluate relevant discovery regarding the likelihood of his removal from the United States without the aid of counsel. The need for discovery, too, suggests the need for the appointment in the instant matter.

C.     **The Potential Need for an Evidentiary Hearing Warrants the Appointment of Counsel.**

Both parties may be required to present argument and evidence regarding suitability for release, and the appropriateness of specific conditions of release may be disputed. A presentation of evidence before this Court, or subsequently to an immigration judge, may be needed should the Court grant the petition

conditioned on additional showings. Therefore, assistance of counsel may be necessary to litigate disputed issues of fact. See Lawson v. Borg, 60 F.3d 608, 611 (9th Cir. 1995) (requiring an evidentiary hearing to litigate contested issues of fact during federal habeas proceedings); see also Weygandt, 718 F.2d at 954 (noting that the appointment of counsel may be appropriate during federal habeas proceedings "if an evidentiary hearing is required"). The Petitioner lacks a sufficient legal background to advocate for himself during a contested release hearing. See Declaration of James Fife, ¶¶ 15-16. The appointment of counsel is necessary to ensure that the Petitioner's rights are adequately protected in contested habeas proceedings.

D. **The Prison Litigation Reform Act, 28 U.S.C. § 1915, Does Not Require the Petitioner to Pay Filing Fees to Proceed with His Request for Federal Habeas Relief.**

The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915, ordinarily requires a prisoner who "brings a civil action or files an appeal in forma pauperis" to "pay the full amount of a filing fee" and to cover subsequent court fees incurred during the litigation of the inmate's claim. 28 U.S.C. § 1915(b). In Naddi v. Hill, however, the Ninth Circuit concluded that "[a] review of the language and intent of the PLRA reveals that Congress was focused on prisoner civil rights and conditions cases, and did not intend to include habeas proceedings in the scope of the Act." 106 F.3d 275, 277 (9th Cir. 1997). Consequently, the Ninth Circuit declined to apply the *in forma pauperis* provisions of the PLRA to habeas Petitioners, and to thereby require habeas Petitioners to pay full filing fees and court costs.

The Petitioner in the instant case is filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, along with the instant motion. Since the Petitioner is not filing another civil action for relief from the conditions of confinement, such as a civil suit under 42 U.S.C. § 1983, he is not required to pay the full amount and filing fees and court costs to pursue habeas relief. Therefore, this Court cannot dismiss his petition for relief, or otherwise penalize the Petitioner, for his failure to pay the full amount of filing fees specified in 28 U.S.C. § 1915.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Court grant the motion for appointment of counsel in this habeas corpus action.

Respectfully submitted,

Dated: 3-14-08

**IBRAHIMA MBODJI**
Petitioner